**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PERDIEM CO, LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CV-1216-JRG-RSP |
| | § | |
| GPS LOGIC, LLC, et al. | § | |
| | § | |
| | § | |

**CLAIM CONSTRUCTION
MEMORANDUM AND ORDER**

On April 21, 2016, the Court held a hearing in *PerDiem Co. LLC v. IndusTrack LLC, et al.*, No. 2:15-CV-727 ("*IndusTrack*" or "*Industrack*"), to determine the proper construction of disputed claim terms in United States Patents No. 8,223,012, 8,493,207, 8,717,166, 9,003,499, and 9,071,931. In the above-captioned case, the parties have agreed that no claim construction hearing is necessary and that the parties' disputes can be addressed based upon the briefing, without oral argument. *See* (Dkt. No. 87). Having considered the arguments made by the parties in their claim construction briefing (Dkt. Nos. 72, 78, 80, 82, and 83),[1] having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Memorandum and Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Claim Construction Memorandum and Order refer to the page numbers of the original documents rather than the page numbers assigned by the Court's electronic docket unless otherwise indicated.

**Table of Contents**

I. BACKGROUND .................................................................................................. 3

II. LEGAL PRINCIPLES ...................................................................................... 3

III. THE PARTIES' STIPULATED TERMS ........................................................ 9

IV. CONSTRUCTION OF DISPUTED TERMS ................................................... 9

    A. "[location] information sharing system" and "[plurality of] [location] information sharing environment(s)" ................................................................ 10

    B. "varying levels of administrative privileges" ............................................. 14

    C. "levels of location information access privilege" ........................................ 15

    D. "first level of administrator privilege" and "second level of administrator privileges" ...... 15

    E. "first user identification code," "second user identification code," and "third user identification code" .......................................................................... 17

    F. "different" .................................................................................................... 19

    G. "plurality of user codes" ............................................................................. 19

    H. "information access code" ........................................................................... 21

    I. "information package access code" .............................................................. 24

    J. "access control code" ................................................................................... 25

    K. "mobile object identification code" ............................................................ 26

    L. "user defined zones" ................................................................................... 26

    M. "event information defined by the first user" ............................................ 29

    N. "authorize a second computing device to convey a location information" ........ 30

    O. "is used to access" ...................................................................................... 31

    P. "by specifying one or more levels of location information access privilege for at least one authorized user in each user group" .............................. 34

    Q. "associate" .................................................................................................. 35

    R. "adapted to determine" ............................................................................... 38

V. CONCLUSION ................................................................................................. 38

APPENDIX A ...................................................................................................... 40

# I. BACKGROUND

Plaintiff has alleged infringement of United States Patents No. 8,223,012 ("the '012 Patent"), 8,493,207 ("the '207 Patent"), 8,717,166 ("the '166 Patent"), 9,003,499 ("the '499 Patent"), and 9,071,931 ("the '931 Patent").

The '012 Patent, titled "System and Method for Conveying Object Location Information," issued on July 17, 2012, and bears an earliest priority date of December 23, 2005. The Abstract of the '012 Patent states:

> An improved system and method for defining an event based upon an object location and a user-defined zone and managing the conveyance of object location event information among computing devices where object location events are defined in terms of a condition based upon a relationship between user-defined zone information and object location information. One or more location information sources are associated with an object to provide the object location information. One or more user-defined zones are defined on a map and one or more object location events are defined. The occurrence of an object location event produces object location event information that is conveyed to users based on user identification codes. Accessibility to object location information, zone information, and object location event information is based upon an object location information access code, a zone information access code, and an object location event information access code, respectively.

The remaining four patents-in-suit are all related to the '012 Patent through continuations. Plaintiff submits that "[a]ll five of the patents share a common specification, and unless otherwise specified, citations to the specification are to the '931 patent, the most recently issued patent." (Dkt. No. 72 at 4). The Court therefore cites the '931 Patent.

# II. LEGAL PRINCIPLES

## A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys.,*

*Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## B.      Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term

either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.") "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one.").

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

Although a statement of lexicography or disavowal must be exacting and clear, it need not be "explicit." *See Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("a patent applicant need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of his patent"). Lexicography or disavowal can be implied where, *e.g.*, the patentee makes clear statements characterizing the scope and purpose of the invention. *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[W]hen the scope of the invention is clearly stated in the specification, and is described as the advantage and distinction of the invention, it is not necessary to disavow explicitly a different scope."). Nonetheless, the plain meaning governs "[a]bsent implied or explicit lexicography or disavowal." *Trs. of Columbia Univ.*, 811 F.3d at 1364 n.2.

## C.  Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) [3]

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 2130. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id.* at 2130 n.10. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

---

[3] Because the Asserted Patents have an effective filing date before September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of § 112.

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005); *accord Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Datamize*, 417 F.3d at 1351).

### III. THE PARTIES' STIPULATED TERMS

The parties reached agreement on constructions as stated in their March 18, 2016 Joint Claim Construction and Prehearing Statement (Dkt. No. 60 at 1–2). Those agreements are set forth in Appendix A to the present Claim Construction Memorandum and Order.

The parties have also agreed that various terms should be construed in accordance with *Industrack*, as set forth in the parties' May 27, 2016 Joint Claim Construction Chart. *See* (Dkt. No. 85); *see also* (*id.* at App'x A).

### IV. CONSTRUCTION OF DISPUTED TERMS

Defendants thingtech and LiveViewGPS (collectively, "thingtech") and Defendants GPS North America and GPS Logic (collectively, "GPSNA" or "GPS NA") have separately identified disputed terms and have submitted competing proposed constructions for some terms.

Plaintiff submits that although "GPSNA identified 113 terms (*See* Dkt. No. 60-2), and thingtech identified 26 terms for construction (*See* Dkt. No. 60-3)," "for claim terms that were already addressed in *Industrack*, [Plaintiff] respectfully incorporates its arguments from its *Industrack* briefs, and will not repeat those terms, proposed constructions, or supporting arguments here." (Dkt. No. 72 at 1–2).

Likewise, Defendant GPSNA submits:

Most of the terms identified by GPS NA, and their proposed constructions were previously before this Court in the related case of *PerDiem LLC v. Industrack, et al.*, No. 2:15-cv-727, E.D.Tex., to which the Court has issued preliminary constructions. GPS NA incorporates the Industrack Defendants' responsive claim construction briefing by reference. For the sake of judicial economy, GPS NA will not re-urge such terms. Therefore, the terms discussed in GPS NA's responsive claim construction brief will include those terms that either were not before the Court in the *Industrack* case or for which the Court did not issue a preliminary construction in the *Industrack* case.

(Dkt. No. 78 at 1).

**A. "[location] information sharing system" and "[plurality of] [location] information sharing environment(s)"**

| **"[location] information sharing system"**<br>**('207 Patent, Claims 3, 10, 17, 20)** | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "[a] computing network where the conveyance of information (e.g., location information, zone information, or event information) from a server to a group of users' computing devices can be controlled or configured" | Defendant GPSNA:<br>    (Agreed)<br><br>Defendant thingtech:<br>    "[h]ardware system that shares information relating to an object"[4] |

| **"[plurality of] [location] information sharing environment(s)"**<br>**('166 Patent, Claims 1, 5-7, 19–22, 25; '499 Patent, Claims 1, 19)** | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "[a] computing network where the conveyance of information (e.g., location information, zone information, or event information) from a server to a group of users' computing devices can be controlled or configured" | Defendant GPSNA:<br>    (Agreed)<br><br>Defendant thingtech:<br>    "a computing network including a map server and computing devices"[5] |

---

[4] Defendant thingtech previously also proposed that this term is indefinite. (Dkt. No. 60, Ex. C at 5); (Dkt. No. 80 at 6).

[5] Defendant thingtech previously proposed: "[v]irtual or non-physical environment that shares information over a network of computing device [*sic*, devices]." (Dkt. No. 60, Ex. C at 6).

| "plurality of information sharing environment(s)" ('499 Patent, Claims 1, 19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "[a] computing network where the conveyance of information (e.g., location information, zone information, or event information) from a server to a group of users' computing devices can be controlled or configured" | Defendant GPSNA:<br>    (Agreed)<br><br>Defendant thingtech:<br>    "A computing network including a map server and computing devices. Each information sharing environment is independent of one another." |

(Dkt. No. 60, Ex. A at 1–2); (*id.*, Ex. B at 18); (*id.*, Ex. C at 5); (Dkt. No. 72 at 5); (Dkt. No. 80 at 6); (Dkt. No. 85, App'x A at 21, 25, 29–30, 32, 33, 39, 40, 42, 43, 46, 49, 50, 52, 53, 57, 60, 61, 66, 67).

(1) The Parties' Positions

Plaintiff argues that Defendant thingtech's previous proposal should be rejected because an "environment" need not be a "virtual" or "non-physical" environment because "the specification describes the 'information sharing environment' consistently with how the 'information sharing system' is used in the claims." (Dkt. No. 72 at 6). Plaintiff also argues that "the new limitations 'virtual or non-physical' versus 'hardware' would be confusing for the jury' because those terms lack support in the specification." (*Id.*)

Defendant thingtech responds that "system" and "environment" in these disputed terms must have different meanings because "a claim construed as giving two different words the same meaning renders the claims indefinite." (Dkt. No. 80 at 5). Defendant thingtech urges that "a person of skill in the art in an effort for clarity would construe 'systems' as the physical hardware and devices and the 'environment' should be construed as being limited to only a computing network including a map server and computing devices as claimed." (*Id.* at 6–7).

Plaintiff replies that "it is not unusual for different claims to claim the same subject-matter using different words." (Dkt. No. 82 at 1).

(2) Analysis

Defendant thingtech has not adequately justified its argument that "information sharing system" must be given a different construction than "information sharing environment." For example, Defendant thingtech argues that it would be improper to give the same meaning to different terms that appear in the same claim, but Defendant thingtech has not identified any claim that recites both "information sharing system" and "information sharing environment," and the Court finds none. *See* (Dkt. No. 80 at 5–7). Indeed, the above-noted claims identified by the parties as to each term appear in different patents, so the principle relied upon by Defendant thingtech is inapplicable. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("[T]he terms 'engaging' and 'sealing' are both expressly recited in the claim and therefore 'engaging' cannot mean the same thing as 'sealing'; if it did, one of the terms would be superfluous."); *see also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("claims that are written in different words may ultimately cover substantially the same subject matter") (citations omitted); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice"); *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958, 968 (Fed. Cir. 2000) (finding that "the term 'inner layer' in [independent] claim 8 should be construed in the same manner as the 'inner body portion' in [independent] claim 1 because they are used interchangeably in the specification").

As to Defendant thingtech's proposal of requiring a "map server," the specification discloses:

The present invention provides a system and method for defining an event that relates to a location of an object and managing the conveyance of related information among computing devices associated with corresponding user identification codes. *In accordance with the present invention, an information-sharing environment consists of a computing network including a map server and computing devices.* Objects associated with sources of location information provide object location information comprising one or more coordinates. *In an exemplary embodiment*, the coordinates correspond to one or more determined locations of the objects within an established coordinate system. In the system and method of the present invention, an object can comprise any device, thing, person or entity that can be located or tracked. A user of a computing device can *retrieve a map, for example, from a map server* and define a user-defined zone on the map. According to one aspect of the invention, an object location event is defined based on a relationship between one or more object locations and one or more user-defined zones, where the occurrence of the object location event is determined when a condition associated with the relationship is satisfied.

'931 Patent at 4:61–5:14 (emphasis added). Although Defendant thingtech attributes special significance to the use of the phrase "consists of" in this disclosure, the principle relied upon by Defendant thingtech applies to usage of "consisting" (rather than "comprising") in a *claim*, not the specification, as Defendant thingtech appears to acknowledge. *See* (Dkt. No. 80 at 5–6); *see also Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'").

Also of note, although the specification refers to the "Server" 110 shown in Figure 1 as "map server 110," the "map information 112" (labeled as "MAPS" in Figure 1) is illustrated in Figure 1 as being distinct from the server. *See id.* at 6:4–8 ("Referring to FIG. 1, information-sharing environment 100 includes computing network 102 having wired and wireless network links 104, 106 and connectivity to the Internet 108 that provides access to a map server 110 and map information 112."). Further, the specification discloses more generally that a "database of user information" can be maintained on a "company's computer server." *Id.* at 12:61–67.

On balance, the above-quoted disclosure of a map server being "[i]n accordance with" the present invention, particularly in light of the subsequent reference to "an exemplary

embodiment," demonstrates that a "map server" is a specific feature of particular embodiments that should not be imported into the claims. *See Comark*, 156 F.3d at 1187; *see also Phillips*, 415 F.3d at 1323.

Finally, Defendant thingtech has not adequately supported its proposal that "[e]ach information sharing environment is independent of one another." (Dkt. No. 85, App'x A at 61 & 66). The Court expressly rejects Defendant thingtech's proposal in that regard because to whatever extent independence is required, such a limitation is set forth by other claim language. *See, e.g.,* '166 Patent at Cl. 1.

The Court therefore hereby construes **"information-sharing system," "information-sharing environment(s),"** and **"location information sharing environment(s)"** to mean **"a computing network where the conveyance of information from a server to a group of users' computing devices can be controlled or configured."**

## B. "varying levels of administrative privileges"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "[a] hierarchy of privileges for administering groups or subgroups of users" | Defendant GPSNA:<br>    "a different administrator for configuring each information-sharing environment"<br><br>Defendant thingtech:<br>    "[d]ifferent levels of privileges to configure information sharing environment" |

(Dkt. No. 60, Ex. A at 2); (*id.*, Ex. B at 18); (*id.*, Ex. C at 6); (Dkt. No. 72 at 8). Plaintiff submits that this term appears in Claims 1, 5, 19, and 22 of the '166 Patent and Claims 1, 3–5, and 19 of the '499 Patent. (Dkt. No. 72 at 8).

In their Joint Claim Construction Chart, the parties submit that the *Industrack* construction should apply in the present case. *See, e.g.,* (Dkt. No. 85, App'x A at 33). The Court therefore does not further address this term.

**C. "levels of location information access privilege"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "[a] hierarchy of privileges for accessing location information" | Defendant GPSNA:<br>　Indefinite<br><br>Defendant thingtech:<br>　"[t]he authorized users' access privileges that are configured by administrator under information sharing environment" |

(Dkt. No. 60, Ex. A at 4); (*id.*, Ex. B at 21); (*id.*, Ex. C at 6); (Dkt. No. 72 at 9). Plaintiff submits that this term appears in Claims 1, 2, 5, and 14 of the '166 Patent. (Dkt. No. 72 at 9).

In their Joint Claim Construction Chart, the parties submit that the *Industrack* construction should apply in the present case. *See, e.g.,* (Dkt. No. 85, App'x A at 34). The Court therefore does not further address this term.

**D. "first level of administrator privilege" and "second level of administrator privileges"**

| "first level of administrator privilege" | |
|---|---|
| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| No construction necessary.<br><br>Alternatively:<br>　"a first level of privileges for administering groups or sub-groups of users" | Defendant thingtech:<br>　"[f]irst level of access control" |

| "second level of administrator privileges" | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| No construction necessary.<br><br>Alternatively:<br>    "a second level of privileges for administering groups or sub-groups of users" | Defendant thingtech:<br>    "[s]econd level of access control" |

(Dkt. No. 60, Ex. A at 193–94); (*id.*, Ex. C at 8); (Dkt. No. 72 at 11). Plaintiff submits that these terms appear in Claims 1 and 6 of the '499 Patent. (Dkt. No. 72 at 11).

Plaintiff submits that "groups or subgroups of users are what is being administered." (Dkt. No. 72 at 11) (citing '931 Patent at 5:39-45). Plaintiff argues that Defendant thingtech improperly conflates "first level of administrator privileges" with "first level of access control" even though these terms are recited separately in Claim 1 of the '499 Patent. (Dkt. No. 72 at 12).

Defendants have not addressed these terms in their briefing, and these terms do not appear as disputed terms in the parties' Joint Claim Construction Chart. *See* (Dkt. Nos. 78 & 80); *see also* (Dkt. No. 85 at App'x A).

The Court therefore finds that this term is no longer in dispute and need not be further addressed.

**E. "first user identification code," "second user identification code," and "third user identification code"**

| "first user identification code" ('012 Patent, Claims 1, 3; '207 Patent, Claims 1, 3, 10, 15, 17, 18, 20, 21; '166 Patent, Claims 4, 8, 10, 16, 23, 24) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| No construction necessary.<br><br>Alternatively:<br>    "a code that identifies a first user" | Defendant thingtech:<br>    "[a] code that associates with a computing device in order to manage the conveyance of information to the computing devices based upon the identify [*sic*] of the user and information access privilege"<br>    The code is different in type from the second user identification code and the third user identification code. |

| "second user identification code" ('012 Patent, Claims 1, 4; '207 Patent, Claims 10, 15–20; '166 Patent, Claims 4, 10, 16, 23) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| No construction necessary.<br><br>Alternatively:<br>    "a code that identifies a second user" | Defendant thingtech:<br>    "[a] code that associates with a computing device in order to manage the conveyance of information to the computing devices based upon the identify [*sic*] of the user and information access privilege"<br>    The code is different in type from the first user identification code and the third user identification code. |

| "third user identification code" ('012 Patent, Claims 1, 2; '166 Patent, Claims 16, 23) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| No construction necessary.<br><br>Alternatively:<br>  "a code that identifies a third user" | Defendant thingtech:<br>  "[a] code that associates with a computing device in order to manage the conveyance of information to the computing devices based upon the identify [*sic*] of the user and information access privilege"<br>  The code is different in type from the first user identification code and second user identification code. |

(Dkt. No. 60, Ex. A at 174 & 177–78); (*id.*, Ex. C at 2–3); (Dkt. No. 72 at 12).

Plaintiff argues that "[t]hese terms, which use common claim construction notation to identify three different 'user identification codes,' are clear on their face." (Dkt. No. 72 at 13). Plaintiff also argues that Defendant thingtech attempts to improperly limit the constructions to a single disclosed embodiment. (*Id.*). Further, Plaintiff argues, "thingtech's 49-word construction imported from the specification would be unwieldy (if not utterly unmanageable) for a jury." (*Id.* at 15). Finally, Plaintiff argues that Defendant thingtech's proposal that the first, second, and third user identification codes are "different in type" from one another "has no support anywhere in the intrinsic (or extrinsic) record." (*Id.* at 15).

Defendants have not addressed these terms in their briefing, and these terms do not appear as disputed terms in the parties' Joint Claim Construction Chart. *See* (Dkt. Nos. 78 & 80); *see also* (Dkt. No. 85 at App'x A).

The Court therefore finds that these terms are no longer in dispute and need not be further addressed.

## F. "different"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | Defendant thingtech:<br>    "[d]ifferent means different in type, not different within same type" |

(Dkt. No. 60, Ex. A at 191); (*id.*, Ex. C at 2 & 7); (Dkt. No. 72 at 16). Plaintiff submits that this term appears in Claims 1 and 7 of the '012 Patent and Claims 4, 10, 16, and 23 of the '166 Patent. (Dkt. No. 72 at 16).

Plaintiff argues: "There is no reason to add a 'different in type' gloss on the plain meaning of the word 'different.' If two codes are not the same, they are 'different.' Nothing more needs to be said. Most importantly, there is nothing in the intrinsic record — nothing in the claims, nothing in the specification, and nothing in the entire file history of the entire patent family — to support this 'different in type' restriction." (Dkt. No. 72 at 16). Plaintiff argues that Defendant thingtech's reliance upon examples in Plaintiff's infringement contentions should be unavailing. (*Id.* at 17).

Defendants have not addressed this term in their briefing, and this term does not appear as a disputed term in the parties' Joint Claim Construction Chart. *See* (Dkt. Nos. 78 & 80; *see also* Dkt. No. 85 at App'x A).

The Court therefore finds that this term is no longer in dispute and need not be further addressed.

## G. "plurality of user codes"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | Defendant thingtech:<br>    "[c]omputer codes that are associated with a user group and specified by an information access code" |

(Dkt. No. 60, Ex. A at 179); (*id.*, Ex. C at 3); (Dkt. No. 72 at 18). Plaintiff submits that this term appears in Claim 7 of the '012 Patent. (Dkt. No. 72 at 18).

Plaintiff argues that Defendant thingtech's proposal of "computer code" is ambiguous, and "[a]lthough in some claims the codes are stored in 'computers' or devices such as computers, the specification identifies a wide variety of types of codes that may or may not be what thingtech envisions as a 'computer' code . . . ." (Dkt. No. 72 at 19). Plaintiff also argues that Defendant thingtech's proposal of "associated with a user group and specified by an information access code" is redundant with other claim language. (*Id.*).

Defendants have not addressed this term in their briefing, and this term does not appear as a disputed term in the parties' Joint Claim Construction Chart. *See* (Dkt. Nos. 78 & 80); *see also* (Dkt. No. 85 at App'x A).

The Court therefore finds that this term is no longer in dispute and need not be further addressed.

**H. "information access code"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, a code for controlling access to information. | Defendant GPSNA:<br>    (Agreed)<br><br>Defendant thingtech:<br>    "A computer code that is associated with information relating to an object. The information comprises at least one of a object location information, a zone information or an object location event information. The information access code is also associated with a user. The information package [*sic*] access code cannot be a password and cannot be selected by the user."[6] |

(Dkt. No. 60, Ex. A at 181); (*id.*, Ex. B at 6); (*id.*, Ex. C at 3); (Dkt. No. 72 at 20); (Dkt. No. 80 at 7); (Dkt. No. 85, App'x A at 1, 4, 6, 8, 10, 13, 15). Plaintiff submits that this term appears in Claims 1, 2, and 5–9 of the '012 Patent. (Dkt. No. 72 at 20).

(1) The Parties' Positions

Plaintiff argues that Defendant thingtech's proposal is ambiguous as to "computer code" and lacks support as to "associated with information relating to an object." (Dkt. No. 72 at 20–21).

Defendant thingtech responds that it proposes the same interpretation that the patentee "provided to the USPTO during prosecution and should be able to be interpreted by a person of skill in the art." (Dkt. No. 80 at 7).

Plaintiff replies that the prosecution history cited by Defendant thingtech pertained to different claim language and is therefore inapplicable here. (Dkt. No. 82 at 4).

---

[6] Defendant thingtech previously proposed: "a computer code that is associated with information relating to an object." (Dkt. No. 80 at 7).

<u>(2) Analysis</u>

During prosecution of parent United States Patent No. 7,525,425 ("the '425 Patent"),[7] the

patentee stated:

> Another aspect of the present invention, as recited by the new claim 34, covers a method executed in a first computing device that is associated with a first user. The claimed execution method in the first computing device requires creating a user defined zone. The user defined zone comprises at least one point on a coordinate system that is associated with a map information source. An object location event is also defined in terms of a condition based upon a relationship between the user defined zone and a location of an object. *An information access code is associated with information relating to the object.* Such information comprise at least one of a object location information, a zone information or an object location event information. The information access code is also associated with a second user of a second computing device in order to enable conveying to the second computing device the information relating to the object based on the association of the information access code with the second user.

(Dkt. No. 72, Ex. 7, Nov. 24, 2008 Amendment at 8–9) (emphasis added).

"[N]ew claim 34" depended from new claim 31, which already expressly recited a step of

"*associating an information access code with information relating to the object*", said information

relating to the object comprising at least one of a object location information, a zone information

or an object location event information." *See* (*id.* at 6–7) (emphasis added). The Court therefore

rejects Defendant thingtech's argument that the cited prosecution history rises to the level of a

definition or a disclaimer.

Also, during prosecution of the parent '425 Patent, the patentee distinguished an

"information access code" from a password while discussing the "Irish" reference, United States

Patent No. 6,691,032:

---

[7] All of the patents-in-suit are related to the '425 Patent through continuations. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("the prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application").

... Irish does no[t] teach or suggest an access codes [*sic*], as conceded by the Action. The Action, however, argues that "access codes are no more than conventional pass words data that allow that allow [*sic*] user 18 access to certain authorized information." This argument is *incorrectly premised on equating the claimed requirement for the information access code with pass words for users*. As is well known by artisans, pass words are often selected by the users themselves to allow authorized access to information. If a user in the game system disclosed in Irish is given a pass word to prevent access to the user's location information, the game would not work. Therefore, one of ordinary skill in the art would have no reasons to pass word protect the user location information in Irish's game. According to the present invention, however, the required information access code are [*sic*] associated with the second user specifically to prevent unauthorized conveyance of information relating to the objects to unauthorized users. Based on the foregoing it is respectfully submitted that Irish does not teach or suggest 1) associating an information access code with information relating to an object 2) associating the information access code with a second user and 3) conveying information relating to the object based on the association.

(Dkt. No. 72, Nov. 24, 2008 Amendment at 9–10) (emphasis added).

Nonetheless, this statement that "password" is not equivalent to "access code" does not amount to a definitive statement that the term "access code" cannot encompass a password. *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added); *see also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) ("Because the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term . . . .").

Likewise, the specification discloses that a password may be required *in addition* to an access code:

Under still another arrangement, an access code specifies the individual users or groups having access to the information to which the access code is associated provided a given user knows the password. As such, the access code may specify

one or more users and/or one or more groups that can enter the appropriate password in order to access the information. With this approach there are two conditions that must be met to gain access, being included on the access list and having knowledge of the password allowing access to information to be managed by changing the access list and/or changing the password.

'931 Patent at 8:4–14; *see id.* at 8:15–21 ("an access code may include a clearance classification code such as Proprietary, Confidential, Secret, Top Secret, etc."); *see also id.* at 7:37–8:23. Thus, although the specification distinguishes between access codes and passwords, this disclosure confirms that the term "access code" is potentially broader than a password or may merely be used in conjunction with a password.

The Court accordingly hereby construes **"information access code"** to mean **"a code for controlling access to information."**

## I. "information package access code"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. Or alternatively, a code for controlling access to an information package. | Defendant GPSNA:<br>   (Agreed)<br><br>Defendant thingtech:<br>   "[a] computer code with the information package that is used to manage the conveying of the information package to one or more users"<br>   The information package access code cannot be a password and cannot be selected by the user. |

(Dkt. No. 60, Ex. A at 182); (*id.*, Ex. B at 7); (*id.*, Ex. C at 3); (Dkt. No. 72 at 25); (Dkt. No. 85, App'x A at 19). Plaintiff submits that this term appears in Claim 18 of the '012 Patent. (Dkt. No. 72 at 25).

Plaintiff argues that Defendant thingtech's proposal suffers from the same flaws as for the term "information access code" (discussed above). (Dkt. No. 72 at 25). Plaintiff also argues

that Defendant thingtech's proposal of "with the information package" lacks support, and the proposal of the phrase "is used to manage the conveying of the information package" is superfluous in light of other claim language. (*Id.* at 26). Finally, Plaintiff argues that Defendant thingtech's proposal of "to one or more users" should be rejected because "[t]he claim says the information package is conveyed 'to a second computing device,' *not* to a user." (*Id.*).

Defendants have not briefed this disputed term apart from the similar term "information access code," which is addressed above. *See* (Dkt. Nos. 78 & 80). Because this disputed term presents essentially the same issues as the term "information access code," which is addressed above, the Court reaches the same conclusions for the same reasons.

The Court accordingly hereby construes **"information package access code"** to mean **"a code for controlling access to an information package."**

**J. "access control code"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, a code for controlling access. | Defendant GPSNA:<br>    Indefinite<br><br>Defendant thingtech:<br>    Means "access code" within the specification, which is a computer code that is associated with information relating to an object. The information comprises at least one of a object location information, a zone information or an object location event information. The information access code is also associated with a user. The access code cannot be a password and cannot be selected by the user. |

(Dkt. No. 60, Ex. A at 196); (*id.*, Ex. B at 28); (*id.*, Ex. C at 8); (Dkt. No. 72 at 26). Plaintiff submits that this term appears in Claims 1 and 19 of the '499 Patent. (Dkt. No. 72 at 26).

In their Joint Claim Construction Chart, the parties submit that the *Industrack* construction should apply in the present case. *See* (Dkt. No. 85, App'x A at 64). The Court therefore does not further address this term.

**K. "mobile object identification code"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, a code that identifies one or more mobile objects | Defendant GPSNA:<br>    Indefinite<br><br>Defendant thingtech:<br>    "[a] computer code that is associated with a mobile object and identifies the mobile object" |

(Dkt. No. 60, Ex. A at 197); (*id.*, Ex. B at 22); (*id.*, Ex. C at 9); (Dkt. No. 72 at 27). Plaintiff submits that this term appears in Claims 1, 6, 19, and 20 of the '499 Patent. (Dkt. No. 72 at 27).

In their Joint Claim Construction Chart, the parties submit that the *Industrack* construction should apply in the present case. *See* (Dkt. No. 85, App'x A at 63). The Court therefore does not further address this term.

**L. "user defined zones"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, zones that are defined by a user. | Defendant GPSNA:<br>    Indefinite[8] |

(Dkt. No. 60, Ex. A at 170); (*id.*, Ex. B at 28); (Dkt. No. 72 at 28). Plaintiff submits that this term appears in Claim 17 of the '499 Patent.

---

[8] Plaintiff's opening brief sets forth Defendant GPSNA's proposal as: "Required step of defining a zone." (Dkt. No. 72 at 28). In its response brief, Defendant GPSNA states: "the user defining zones and events are required steps and should be treated as such." (Dkt. No. 78 at 6).

<u>(1) The Parties' Positions</u>

Plaintiff argues that the meaning of this term is "plain on its face," and Plaintiff argues that Defendant GPSNA's proposal is nonsensical because the claim in which this term appears is a system claim, not a method claim. (Dkt. No. 72 at 28).

Defendant GPSNA responds that "[t]he 'invention' requires that a user define both zones and events," and Defendant GPSNA cites the specification as well as prosecution history. (Dkt. No. 78 at 6–7).

Plaintiff replies by reiterating that the claims at issue are system claims, not method claims. *See* (Dkt. No. 83 at 4–5).

<u>(2) Analysis</u>

The disputed term appears in Claim 17 of the '499 Patent, which depends from Claim 16. Claims 16 and 17 (emphasis added):

> 16. The system of claim 6, wherein said plurality of specified event conditions are related [to] a plurality of zones comprising at least one coordinate within a coordinate reference system.

> 17. The system of claim 16, wherein said plurality of zones comprise authorized *user defined zones* or predefined zones.

On balance, Claim 17 of the '499 Patent requires that "said plurality of zones" must have been defined by a user, but this is merely an attribute of the zones and does not amount to an actual method step. *See, e.g.,* '931 Patent at 1:62–63 ("The invention requires defining a zone by the one or more users.") & 17:29 ("user-defined zones"); *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (noting that functional claim language is permissible); *cf. Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (finding that the phrase "being provided to" was "not used as a verb" in the claim at issue but rather was "part of a phrase that conveys information about" a term).

Defendant GPSNA has cited prosecution history in which the patentee stated that "[b]oth aspect [*sic*] of the invention require 1) defining a zone by a first user, 2) defining an object location event . . .," but the claims at issue in that prosecution history were method claims that expressly recited "defining a zone." *See* (Dkt. No. 72, Ex. 7, Nov. 24, 2008 Amendment at 2 & 9); *see also id.* at 6 ("creating a user defined zone"). Thus, this prosecution history does not give rise to any relevant disclaimer and does not otherwise lend any weight to Defendant GPSNA's argument that the system claims here at issue recite a method step.

The Court therefore hereby expressly rejects Defendant GPSNA's argument that the disputed term recites a method step. No further construction is necessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"user defined zones"** to have its **plain meaning**.

**M. "event information defined by the first user"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary. Alternatively, events that are defined by a user. | Defendant GPSNA:<br>   Required step of defining an event[9] |

(Dkt. No. 60, Ex. A at 171); (Dkt. No. 72 at 29); (Dkt. No. 85, App'x A at 23). Plaintiff submits

that this term appears in Claim 14 of the '207 Patent. (Dkt. No. 72 at 29).

(1) The Parties' Positions

Plaintiff argues that "[t]his term recites its meaning on its face," and Plaintiff argues that

Defendant GPSNA's proposal is nonsensical because the claim in which this term appears is a

system claim, not a method claim. (Dkt. No. 72 at 29).

Defendant GPSNA argues this term together with the term "user defined zones," which is

addressed above. *See* (Dkt. No. 78 at 6–7). Likewise, Plaintiff does the same in its reply brief.

*See* (Dkt. No. 83 at 4–5).

(2) Analysis

This disputed term appears in Claim 14 of the '207 Patent, which recites (emphasis

added):

> 14. The information-sharing system of claim 10, wherein the authorized user
> privilege is used to access an *event information defined by the first user*, said
> event information relating a zone information to the location information, said
> zone information comprising a point on a defined coordinate system.

On balance, Claim 14 of the '207 Patent requires that "event information" must have

been defined by a user, but this is merely an attribute of the event information and does not

amount to an actual method step. *See Microprocessor Enhancement*, 520 F.3d at 1375 (noting

that functional claim language is permissible); *see also Summit 6*, 802 F.3d at 1291 (finding that

---

[9] Defendant GPSNA previously proposed: "Indefinite." (Dkt. No. 60, Ex. B at 29).

the phrase "being provided to" was "not used as a verb" in the claim at issue but rather was "part of a phrase that conveys information about" a term).

Thus, for substantially the same reasons set forth above as to the term "user defined zones," the Court hereby expressly rejects Defendant GPSNA's argument that "event information defined by the first user" recites a method step. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"event information defined by the first user"** to have its **plain meaning**.

### N. "authorize a second computing device to convey a location information"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | Defendant GPSNA: |
| |    Required step of authorizing a second computing device to convey location information |

(Dkt. No. 60, Ex. A at 140); (*id.*, Ex. B at 23); (Dkt. No. 85, App'x A at 20). The parties submit that this term appears in Claim 1 of the '207 Patent. (Dkt. No. 60, Ex. A at 140); (*id.*, Ex. B at 23).

#### (1) The Parties' Positions

Plaintiff argues: "[T]he language states '*a privilege to* authorize a second computing device to convey a location information . . . .' It refers to what the privilege is for, rather than itself being a required method step." (Dkt. No. 72 at 30).

Defendant GPSNA responds that this term "signifies an active, ongoing step of authorizing which is performed by an authorized user with the requisite 'privilege' to 'authorize.'" (Dkt. No. 78 at 8).

Plaintiff replies by reiterating that "[t]he claim . . . states that the authorized user has a *privilege to authorize* — it describes what the authorized user is *allowed* to do, not necessarily what the user *is* doing." (Dkt. No. 83 at 5).

(2) Analysis

Claim 1 of the '207 Patent recites (emphasis added):

1. A method for conveying location information, comprising:
      receiving an authorization from a first user of a first computing device having a first user identification code associated with an authorized user with *a privilege to authorize a second computing device to convey a location information* of a third computing device having a third user identification code associated with a third user; and
      conveying the location information based on the authorization.

On balance, the disputed term sets forth a further attribute of other claim language and does not amount to an actual method step. *See Microprocessor Enhancement*, 520 F.3d at 1375 (noting that functional claim language is permissible); *see also Summit 6*, 802 F.3d at 1291 (finding that the phrase "being provided to" was "not used as a verb" in the claim at issue but rather was "part of a phrase that conveys information about" a term).

The Court thus hereby expressly rejects Defendant GPSNA's proposed interpretation. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"authorize a second computing device to convey a location information"** to have its **plain meaning**.

**O. "is used to access"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary | Defendant GPSNA:<br>    Required step of accessing |

(Dkt. No. 60, Ex. A at 142); (*id.*, Ex. B at 23); (Dkt. No. 85, App'x A at 24 & 31). Plaintiff submits that this term appears in Claims 14 and 27 of the '207 Patent. (Dkt. No. 72 at 30).

<u>(1) The Parties' Positions</u>

Plaintiff argues: "[C]laim 14 is a system claim, and claim 27 is a method claim. Both instances are similar to 'wherein' clauses, where the language describes the capabilities associated with the authorized user privileges." (Dkt. No. 72 at 30).

Defendant GPSNA responds: "It is not enough for 'is used to access' to simply meaning [*sic*] that act of using the access privilege to access event information. It is required that for the location information to be conveyed as the method defines in Claim 207:1, the authorized user must take the step to use the access privilege to access the event information." (Dkt. No. 78 at 8).

Plaintiff replies that "[t]his phrase simply describes the capability and functionality of the authorized user privilege and access privilege." (Dkt. No. 83 at 5–6). Plaintiff also notes that whereas Defendants GPSNA relies upon Claim 1 of the '207 Patent, the claims at issue do not depend from Claim 1. (*Id.* at 6).

<u>(2) Analysis</u>

Claims 14 and 27 of the '207 Patent depend from Claim 10 and Claim 20, respectively. Claims 10, 14, 20, and 27 of the '207 Patent recite (emphasis added):

> 10. An information-sharing system, comprising:
>      a database of user information comprising a plurality of user identification codes comprising a first user identification code and a second user identification code; and
>      an administrator of the information-sharing system; said administrator associating the plurality of user identification codes with one or more user groups, including a user group associated with the first user identification code and second user identification code, wherein the administrator associates the first user identification code with an authorized user privilege, said authorized privilege comprising a privilege to associate the second user identification with a location information source that provides location information associated with an object,

wherein the location information of the object is conveyed to a computing device based on the authorized user privilege.

* * *

14. The information-sharing system of claim 10, wherein the authorized user privilege *is used to access* an event information defined by the first user, said event information relating a zone information to the location information, said zone information comprising a point on a defined coordinate system.

* * *

20. A method for conveying location information comprising:

associating a plurality of user identification codes stored in a database with a user group comprising a first user associated with a first user identification code, a second user associated with a second user identification and a third user associated with a third user identification code;

specifying the first user as an authorized user by an administrator of a location information sharing system;

associating the authorized user with an access privilege to location information;

associating the second user identification code with a second computing device;

wherein the access privilege comprises a privilege to access location information associated with the second computing device; and

receiving authorization from the authorized user for conveyance of the location information.

* * *

27. The method of claim 20, wherein the access privilege *is used to access* an event information defined by the first user, said event information relating a zone information to the location information of, the second computing device, said zone information comprising a point on a defined coordinate system.

Claim 14 is a system claim, and the passive phrasing of the disputed term in the phrase "the authorized user privilege is used to access an event information" does not amount to a method step. That is, the "is used to access" term is merely descriptive of the "authorized user privilege." Claim 27 is a method claim but is similar as to this disputed term. That is, the disputed term is descriptive of the "access privilege" and does not set forth a method step.

The Court thus construes this disputed term as set forth in the following chart:

| Term | Construction |
|------|-------------|
| **"is used to access" (Claim 14)** | **Plain meaning (not a method step)** |
| **"is used to access" (Claim 27)** | **Plain meaning (not a separate method step)** |

**P. "by specifying one or more levels of location information access privilege for at least one authorized user in each user group"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|-----------------------------------|-----------------------------------|
| No construction necessary | Defendant GPSNA:<br>    Required step of specifying one or more levels of location information access privilege for at least on[e] authorized user in each user group |

(Dkt. No. 60, Ex. A at 145); (*id.*, Ex. B at 23); (Dkt. No. 85, App'x A at 32). Plaintiff submits that this term appears in Claim 1 of the '166 Patent. (Dkt. No. 72 at 30).

(1) The Parties' Positions

Plaintiff argues that "this term refers to how the first information-sharing environment is configured, rather than itself being a required method step." (Dkt. No. 72 at 30).

Defendant GPSNA responds that "this term is not merely how the configuring is to be accomplished, it is a step that is to be taken as part of the method of conveying information." (Dkt. No. 78 at 8).

Plaintiff replies by reiterating that this term relates to *how* configuring is to be accomplished. (Dkt. No. 83 at 6).

(2) Analysis

Claim 1 of the '166 Patent recites (emphasis added):

1. A method for conveying information related to locations of a plurality of mobile devices of users in a plurality of user groups, comprising:
      creating a plurality of information-sharing environments over a network of computing devices comprising interfaces for configuring the plurality of

information-sharing environments for users based on varying levels of administrative privileges, wherein the plurality of information-sharing environments comprise a first information-sharing environment and a plurality of second information-sharing environments, said plurality of second information-sharing environments comprising a plurality of independently configurable location information sharing environments created within the first information sharing environment;

configuring the first information-sharing environment based on a first level of administrative privilege to associate one or more users that use the plurality of location information sharing environment with each one of the plurality of user groups;

configuring each one [of] the plurality of location information-sharing environments for each user group independent of one another based on at least one second level of administrative privilege *by specifying one or more levels of location information access privilege for at least one authorized user in each user group*; and

managing conveyance of information related to location of the plurality of the mobile devices in the plurality of user groups based on a plurality of location information access privileges associated with a plurality of authorized users.

The context of the surrounding claim language thus demonstrates that the disputed term is a limitation as to how the "configuring" step must be performed, but the "specifying" action is not itself a distinct method step.

The Court therefore hereby expressly rejects Defendant GPSNA's proposed construction. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"by specifying one or more levels of location information access privilege for at least one authorized user in each user group"** to have its **plain meaning**.

### Q. "associate"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary | Defendant GPSNA: Required step of association |

(Dkt. No. 60, Ex. A at 146–49); (*id.*, Ex. B at 24); *see* (*id.* at 23–24).

<u>(1) The Parties' Positions</u>

Defendant GPSNA presents the same arguments that were presented in *Industrack*. *Compare* (Dkt. No. 78 at 3–5) *with Industrack*, Dkt. No. 91 at 16–19. In particular, Defendant GPSNA argues: "Every Asserted Claim recites the term 'associate' in some form. That language must require proof of something for infringement: an affirmative step of association or, at a minimum, and [*sic*, an] actual state of association (*i.e.*, the product of an actual step of association), as distinguished from the mere capability of forming an association." (Dkt. No. 78 at 3). Defendants also argue that "method claim [6 of the '012 Patent] expressly requires steps that cannot be performed until after the required association steps are completed." (*Id.*). Defendants further argue that in Claims 4 and 19 of the '166 Patent, "[t]he term 'to associate' modifies 'configuring' and makes clear that the action constituting 'configuring' is the action of 'associating.'" (*Id.* at 4). As to Claim 17 of the '207 Patent, Defendants argue that "the claim states that location information *is conveyed*, after the recited associations are actually made and the authorized user interacts with the 'system.'" (*Id.* at 5).

Plaintiff replies as to Claim 6 of the '012 Patent that the recited step is conveying, not associating. (Dkt. No. 83 at 1). As to this and other claims, Plaintiff argues that the "associate" terms refer to configuration rather than any actual step of associating. (*Id.* at 2); *see* (*id.* at 2–4). Plaintiff also submits:

> By way of analogy, consider a hypothetical claim involving "a metal associated with magnetism." No one performed any *activity* to associate certain metals with magnetism. Rather, certain metals (*e.g.*, iron or nickel) are associated with magnetism by their very nature. The same could be said about the information access code and third user identification code in the '012 claims — these items must be "associated with" each other, but that does not require any *step* or *activity* of associating them.

(*Id.* at 2). As to Claims 4 and 19 of the '166 Patent, Plaintiff argues that "the configuring is based on administrative privilege, and the administrative privilege comprises the privilege to associate users with groups. This does not require the '*action* of associating;' it merely requires the *privilege* to do so." (*Id.* at 3). As to Claim 7 of the '012 Patent and Claim 17 of the '207 Patent, Plaintiff presents similar arguments as presented above. *See* (*id.* at 3–4).

(2) Analysis

As to the particular claims that have been addressed by Defendants, in Claim 6 of the '012 Patent the phrase "is associated" sets forth an attribute of the recited "second user identification code," and the "is conveyed" phrase recites that such conveyance is "based on the information access code." These limitations thus refer to configuration rather than actual method steps. Claims 4 and 19 of the '166 Patent and Claim 17 of the '207 Patent are also similar in this regard.

For example, Claim 17 of the '207 Patent recites "an administrator device that associates . . .," but this merely sets forth a functional requirement rather than an actual method step. *See Microprocessor Enhancement*, 520 F.3d at 1375 (noting that functional claim language is permissible); *see also Summit 6*, 802 F.3d at 1291 (finding that the phrase "being provided to" was "not used as a verb" in the claim at issue but rather was "part of a phrase that conveys information about" a term).

As to the flow charts in Figures 3-7 of the patents-in-suit, "patent coverage is not necessarily limited to inventions that look like the ones in the figures." *MBO Labs. Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

Because Defendants have not presented specific arguments as to all of the "associate" terms, the Court need not address each of those terms individually. The Court thus hereby

expressly rejects Defendant GPSNA's proposed constructions. No further construction is necessary.

**R. "adapted to determine"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction necessary.<br><br>Not indefinite; Should not be construed in acc[o]rdance with 35 U.S.C. § 112, ¶ 6. | Defendant GPSNA:<br>    Indefinite as written, or when construed in accordance with 35 U.S.C. § 112, ¶ 6.<br>    Function: to determine occurrence of events based on the plurality of specified event conditions<br>    No corresponding structure, material, or acts are disclosed. |

(Dkt. No. 60, Ex. A at 159–60); (*id.*, Ex. B at 27). Defendants submit that this term appears in Claim 8 of the '499 Patent. (Dkt. No. 78 at 9).

Plaintiff has withdrawn the claim in which this term appears, namely Claim 8 of the '499 Patent. (Dkt. No. 83 at 6). The Court therefore does not address this term.

## V. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.

The parties are ordered to not refer to each other's claim construction positions in the presence of the jury. Likewise, in the presence of the jury, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court. The Court's reasoning in this order binds the testimony of any witnesses, but any reference to the claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 27th day of July, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Term | Parties' Agreement |
|---|---|
| "second user identification" ('207 Pat., Cl. 10) | "second user identification code" |
| "information-sharing system information-sharing system" ('207 Pat., Cls. 15, 18) | "information-sharing system" |
| "of, the second computing device" ('207 Pat., Cl. 27) | "of the second computing device" |
| "second information-sharing environment" ('166 Pat., Cl. 5) | "second information-sharing environments" |
| "based a plurality" ('166 Pat., Cls. 5, 19) | "based on a plurality" |
| "device-of" ('166 Pat., Cl. 6) | "device of" |
| "second authorized" ('166 Pat., Cl. 13) | "second authorized user" |
| "mobile devices" ('166 Pat., Cl. 15) | "mobile device" |
| "different the first user identification code" ('166 Pat., Cl. 16) | "different from the first user identification code" |
| "different the first and second user identification codes" ('166 Pat., Cl. 16) | "different from the first and second user identification codes" |
| "first information-sharing environments" ('166 Pat., Cl. 21) | "first information-sharing environment" |
| "based a first level of administrative privilege" ('166 Pat., Cl. 22) | "based on a first level of administrative privilege" |

| | |
|---|---|
| "first user identification" (′166 Pat., Cl. 23) | "first user identification code" |
| "first identification code" (′166 Pat., Cl. 23) | "first user identification code" |
| "second information sharing" (′166 Pat., Cl. 25) | "second information sharing environment" |
| "second information environment" (′166 Pat., Cl. 25) | "second information sharing environment" |
| "communicates" (′499 Pat., Cl. 1) | "communicate" |
| "second levels" (′499 Pat., Cl. 1) | "second level" |
| "related a" (′499 Pat., Cl. 16) | "related to a" |
| "privileges by for" (′499 Pat., Cl. 19) | "privileges for" |

(Dkt. No. 60 at 1–2).